

FILED

OCT 29 2015

CLERK, US DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

JOSEPH L. HEALEY, in his capacity as Trustee
of the CCG Systems, Inc. Employee Stock Ownership
Plan and Trust,

 Plaintiff,

 v. Civil Action No. 2:15cv267

PAMELA J. ABADIE,

 Defendant.

## OPINION & ORDER

This matter is before the Court pursuant to Defendant Pamela Abadie's ("Defendant" or

"Abadie") Rule 12(b)(6) Motion to Dismiss the Complaint ("Motion"). Doc. 10. A hearing was

held on Tuesday, October 27, 2015 at 11:00 a.m., and ruling from the bench, the Court **DENIED**

Defendant's Motion and **GRANTED** Plaintiff the opportunity to amend the Complaint.

## I. BACKGROUND

### A. Factual Allegations[1]

*i. The Stock Purchase Transaction*

Defendant Abadie is the founder and former Chief Executive Officer ("CEO") of CCG

Systems, Inc. ("CCG" or "Company"), a position in which she served until her resignation in

2008. Compl. ¶¶ 9, 14. Prior to 2004, employees of CCG were periodically provided Company

stock as a reward for their service, with Abadie holding 64.2% of the Company's outstanding

shares. Doc. 11 at 2; Compl. ¶ 12. On April 26, 2004, the Company established the Employee

---

[1] "In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the
complaint in the light most favorable to the [non-moving party]." Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420
(4th Cir. 2005) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)). The Court cautions,
however, that the facts alleged by the parties are recited here for the limited purpose of deciding the instant Motion.
The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.

Stock Ownership Plan ("Plan" or "ESOP") at issue in this litigation, and on May 31, 2004, Abadie and the remaining CCG shareholders entered into a series of transactions through which the Plan acquired 100% of the Company's outstanding shares ("Stock Purchase Transaction"). Compl. ¶¶ 15–16. The share price for the Stock Purchase Transaction was calculated based on an independent valuation report prepared by Wall, Einhorn & Chernitzer, P.C. ("WEC Report"), and as a Plan trustee, Abadie approved the sale on behalf of both the Plan and shareholders (herself included). Compl. ¶¶ 30–31. The WEC Report was based in large part upon information provided to the preparers by Abadie, and the stock offered for purchase was ultimately valued at $4,537,000. Compl. ¶¶ 33–34.

### ii. The Loan Transaction

As a means of financing the Stock Purchase Transaction, Abadie and the shareholders entered into a series of promissory notes on behalf of the Plan totaling $3,598,222 ("Loan Transaction"). Compl. ¶ 18. The Plan also paid the shareholders an additional $400,000 in cash to purchase their outstanding stock, bringing the total Stock Purchase Transaction price to approximately $4,000,000. Compl. ¶ 18. The promissory note entered into between Abadie and the Plan, by and through Abadie as Plan Trustee, totaled $2,399,358 ("Note"). The terms of the Note required that annual payments be made to Abadie on May 31 of each subsequent year in an amount equal to 53.3456% of CCG's net, pre-tax profit together with compounded 5% annual interest. Compl. Ex. A at 2. The Note did not specify a term, see Compl. ¶ 20, Ex. A, but the WEC Report assumed a twelve (12) year payoff period at inception, which was adjusted to a twenty-four (24) year pay off period in 2006. Compl. ¶ 59–60.

*iii. Post-Transaction Investigations*

Plaintiff Joseph Healey ("Plaintiff" or "Healey") had been hired as the new Company President and Plan trustee in the years following the Plan's establishment.  Doc. 11 at 3. Subsequent to Abadie's resignation as CEO in 2008, Plaintiff alleges Abadie remained a Plan trustee until August 2009.  Compl. ¶ 13.  From 2005 through 2012, the Plan made payments to Abadie on the Note as scheduled.  Doc. 11 at 3.  However, Plaintiff claims that the Department of Labor ("DOL") had initiated an investigation into the formation of the Plan near the end of Abadie's tenure with CCG.  Compl. ¶ 69.  Plaintiff references a letter received from the DOL dated July 13, 2012, which allegedly identified a series of Employee Retirement Income Security Act ("ERISA") violations stemming from the Stock Purchase and Loan Transactions of May 31, 2004. Compl. ¶ 69.

In response to this letter, Healey states he conducted an internal investigation into the Stock Purchase and Loan Transactions.  Compl. ¶ 71. Western Reserve Valuation Services ("WRV"), an independent valuation firm, was hired to review the original WEC Report on which the Plan's stock purchase price was based.  Compl. ¶ 72.  In 2013, WRV concluded that the WEC Report overvalued the Company's stock by approximately $1.7 million.  Compl. ¶ 72.  In order to rectify this discrepancy, Healey alleges he attempted to enter into a corrected Note with Abadie in July 2013.  Compl. ¶ 90.  The corrected Note would have reduced the remaining balance owed to Abadie from $1,897,168 to $738,751.  Due to perceived ERISA and fiduciary violations on the part of Defendant, she was informed that unless and until she entered into a corrected Note with the Plan, further payments on the Note would be held in escrow.  Compl. ¶ 93.  Abadie refused to enter into the proposed corrected Note, and payments to Abadie are alleged to have been in escrow since 2013.  Compl. ¶ 93.

**B. Procedural History**

*i. State Court Litigation & Case No. 2:15cv164*

On March 13, 2015, Abadie filed a complaint against the Plan in the Circuit Court of the City of Virginia Beach seeking payments due on the Note for 2013 and 2014.[2] Abadie v. CCG Sys., Inc. Emp. Stock Ownership Plan & Trust, No. CL1500837-00 (Va. filed March 13, 2015). On April 17, 2015, Defendant CCG filed a Notice of Removal with this Court. Abadie v. CCG Sys., Inc. Emp. Stock Ownership Plan & Trust, No. 2:15cv164, ECF No. 1 (E.D Va. remanded May 29, 2015). Following removal, this Court sua sponte issued a Memorandum Show Cause Order requiring Defendant CCG to show why the case should not be remanded for lack of subject matter jurisdiction. Id. at ECF No. 8. Defendant was unable to show that ERISA's doctrine of complete preemption applied to the matter, and the case was remanded to the Circuit Court of the City of Virginia Beach, where it is still pending. Id. at ECF No. 15; Abadie v. CCG Sys., Inc. Emp. Stock Ownership Plan & Trust, No. CL1500837-01 (Va. filed June 1, 2015).

*ii. Present Litigation*

On June 12, 2015, Healey, in his capacity as Plan trustee, filed the present action against Abadie alleging breaches of fiduciary duty for violations arising under ERISA §§ 502(a)(2) and (a)(3), 29 U.S.C. §§ 1132(a)(2) and (a)(3) respectively. Compl. ¶ 1. Plaintiff makes six (6) claims for relief against Abadie stemming from the Stock Purchase and Loan Transactions of May 31, 2004. Claims One, Three, and Five allege violations of ERISA §§ 404, 406(a)(1)(A), and 406(b) in connection with the Stock Purchase Transaction. Compl. ¶¶ 95–104, 113–19, 130–36. Claims Two, Four, and Six allege violations of ERISA §§ 404, 406(a)(1)(B) and 404(a)(1)(D), and 406(b) in connection with the Loan Transaction. Compl. ¶¶ 105–12, 120–29,

---

[2] In the state complaint, Abadie reserved the right to seek additional payments.

137–43. Defendant requests the Court dismiss the entire Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

In her Motion, Defendant argues that two affirmative defenses bar Plaintiff's action. Firstly, she contends that the applicable statute of limitations imposed by ERISA § 403 has run on all six (6) of Plaintiff's claims. Doc. 11 at 7. Secondly, she alleges that Healey is without authority to bring suit, and as such, "this suit is an ultra vires act and must be dismissed." Id. Plaintiff argues that (1) as a fiduciary under the Plan, Healey is authorized to bring this action as a minority trustee, and (2) the claims are timely under ERISA's provisions addressing fraud or concealment, omissions, and "continuing violations." Doc. 14 at 11, 14.

## II. LEGAL STANDARDS

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Although affirmative defenses are traditionally raised pursuant to Federal Rule of Civil Procedure 8(c), such defenses may be raised in a Rule 12(b)(6) motion to dismiss "if all facts necessary to the affirmative defense clearly appear[] on the face of the complaint." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)) (alteration in original). The burden of establishing an affirmative defense, however, rests with the defendant. Id.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although a court must accept as true all well-pleaded factual allegations, the same is not true for legal

conclusions. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. In deciding the motion, a court may consider the facts alleged on the face of the complaint as well as "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1357 (1990)). The Court may look to documents attached to the complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353 n. 3 (4th Cir. 2004) (citations omitted).

### III. ANALYSIS

**A. Healey has Authority to bring this Action on Behalf of the Plan as a Fiduciary**

In her Motion, Defendant argues that because Plaintiff is not the sole trustee of the Plan, he cannot bring this action without authorization from the majority of trustees. Doc. 11 at 6. Currently, the Plan has two trustees, Plaintiff and Ms. Nina R. McCoy. Id. At the time of the Stock Purchase and Loan Transactions at issue, Ms. McCoy was a Plan trustee, Company officer, Company director, and selling shareholder. Compl. ¶ 92. Unlike Defendant, Ms. McCoy agreed to enter into a corrected promissory note with the Plan following the alleged DOL investigation. Comp. ¶ 92. Although she is still a Plan trustee, apparently she has "recused herself from acting as a trustee with respect to this litigation and the internal investigation that preceded it." Doc. 14 at 13. Healey contends that he has independent authority under ERISA §§ 502(a)(2), (a)(3) to bring this action as a fiduciary of the Plan. Id. at 9.

ERISA §§ 502(a)(2), (a)(3) permit "a participant, beneficiary or fiduciary" of a plan to bring a civil action for relief associated with ERISA violations. 29 U.S.C. §§ 1132(a)(2), (a)(3)

(emphasis added).   Defendant, however, argues that Section 10.10 of the Plan document,

attached as Exhibit B to the Complaint, prevents Healey from acting on behalf of the Plan

without approval from the majority of trustees.  Doc. 11 at 6.  Section 10.10, titled <u>Acting for the</u>

<u>Trustee</u> [sic], reads as follows:

> If more than one (1) Trustee is serving hereunder, any Trustee may, with the
> approval of a majority of Trustees, act for the Trust, and his signature on any
> paper shall be deemed to be the signature of the Trustees acting jointly. In the
> case of any Company account held in the name of the Trust, the signature of any
> Trustee shall be sufficient signature for any check drawn upon such account.

Compl. Ex. B at 14.  Plaintiff argues that Section 10.10 refers only to use of the Plan's assets that

ERISA § 403 requires be held in trust.  Doc. 14 at 11–12.  Further, Plaintiff contends that even if

Section 10.10 required approval by the majority of trustees to bring a civil action on behalf of the

Plan, ERISA § 404(a)(1)(D) does not permit plan instruments to control fiduciary duties insofar

as those duties conflict with ERISA.  29 U.S.C. § 1104(a)(1)(D).

When ERISA was first established in 1974, the DOL issued an interpretive bulletin on

which courts still rely.  <u>See Humana Health Plan, Inc. v. Nguyen</u>, 785 F.3d 1023, 1029, 1030

(5th Cir. 2015) (utilizing 29 C.F.R. § 2509.75–5 interpretative guidelines in determining

employee categorization under ERISA).   In this bulletin, the DOL clarified that if a majority of

trustees are planning to take an action that would be considered a breach of their fiduciary duties

under ERISA § 404(a)(1)(B), then the minority of trustees are responsible for taking legal action

under ERISA to prevent such violations.  29 C.F.R. § 2509.75–5.   The United States Court of

Appeals for the Sixth Circuit permitted, without argument, a matter to go forward when a single

minority trustee of an ERISA plan brought an action for breach of fiduciary duty on behalf of the

plan against "nine former trustees and two current trustees."  <u>Corbin v. Blankenburg</u>, 39 F.3d

650, 651 (6th Cir. 1994).  Under Abadie's theory, however, no action would be permissible

without approval of the majority of Plan trustees even when the only trustee at issue has a clear conflict of interest in regards to the litigation.

Accordingly, the Court **FOUND** that ERISA §§ 502(a)(2), (a)(3) permits a single fiduciary, in this case Plaintiff, to bring an action on behalf of the Plan to remedy ERISA violations. The Court **DENIED** Defendant's Motion on this ground.

**B. It is not Appropriate to Dismiss this Action Pursuant to Rule 12(b)(6)**

When a defendant raises an affirmative defense on a Rule 12(b)(6) motion to dismiss, all facts necessary for the Court to draw a conclusion that the claims are barred must appear on the face of the Complaint. See XL Specialty Ins. Co. v. Truland, No. 1:14cv1058, 2015 WL 925582, at *5 (E.D. Va. Mar. 3, 2015). If the Court determines that there is not enough information to conclude that Plaintiff's claims are time barred by the applicable statute of limitations, Defendant's Motion to dismiss the claims on that ground must be denied. See id. In order to rule in Defendant's favor on a statute of limitations defense brought pursuant to Rule 12(b)(6), the Complaint must conclusively foreclose a finding that the action is not time barred. See Curtis v. Merrill Lynch Pierce Fenner & Smith, Inc., No. 1:09cv740, 2010 WL 3609598, *4 (M.D.N.C. September 9, 2010). ERISA § 413 sets forth the applicable statute of limitations governing ERISA claims. It reads as follows:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>
> > (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> >
> > (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced
not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

Firstly, Defendant argues that because the "last actions" of the transactions at issue took

place on May 31, 2004 and the Plan had actual knowledge of the transactions, this action is

governed by the three-year limitations period. Doc. 11 at 9. Secondly, she argues that even if

the Plan did not have the requisite knowledge to trigger the three-year limitations period, the

alternative six-year limitations period expired on May 31, 2010. Id. at 17. Thirdly, she claims

that this case is not one of "omission," in which the statute would run from the "latest date on

which the fiduciary could have cured the breach or violation," 29 U.S.C. § 1113(1), because

"under that theory, as long as someone serves as a trustee then there is no statute of limitations."

Doc 11 at 13. Lastly, she contends Plaintiff has failed to make a showing that Defendant acted

fraudulently such that the statutory exception for fraud or concealment is applicable. Id. at 14.

Plaintiff counters that, contrary to Defendant's assertions, he has pled three theories under which

his claims are timely: (1) Fraud or concealment, (2) omission, and (3) a "continuing violation"

theory as to the Loan Transaction. Doc. 14 at 14–15.

*i. Fraud or Concealment*

Plaintiff contends that "because Abadie actively covered up the prohibited transactions at

issue, and Healey consequently did not discovery them until 2013," his claims are timely. Doc.

14 at 16. The Fourth Circuit has clarified that § 413 "creates a general six year statute of

limitations, shortened to three years in cases where the plaintiff has actual knowledge, and

potentially extended to six years from the date of discovery in cases involving fraud or

concealment." Browning v. Tiger's Eye Benefits Consulting, 313 F. App'x 656, 660 (4th Cir.

2009) (quoting Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1554 (3d Cir. 1996)). In this

Circuit, "the six-year 'fraud or concealment' provision [ ] encompasses at a minimum the 'fraudulent concealment doctrine,' which applies when the defendant acts to prevent or delay the plaintiff's discovery of the breach." Id. at 663. "[T]he fraudulent concealment doctrine tolls the statute of limitations until the plaintiff in the exercise of reasonable diligence discovered or should have discovered the alleged fraud or concealment." Id. (quoting J. Gelis Band Emp. Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1255 (1st Cir. 1996)).

In order to plead fraudulent concealment, Plaintiff must make a showing that he was "prevented from discovering the breach or violation as a result of concealment" by Abadie. Id. The doctrine requires Healey to "show (1) that defendant[] engaged in a course of conduct designed to conceal evidence of [] [her] alleged wrongdoing and that (2) [the plaintiff] [] [was] not on actual or constructive notice of that evidence, despite (3) [] [his] exercise of diligence." Id. The six-year limitations period is not triggered "if the concealing act does not delay actual or constructive notice of the fiduciary's wrongdoing." Id.

Plaintiff's Complaint includes a section titled "Abadie's Acts of Fraud And/Or Concealment In Connection With The Prohibited Transactions," in which he attempts to show that the "fraudulent concealment" exception is applicable in the present matter. Comp. ¶¶ 74–94. As allegations of fraud must be pled with specificity pursuant to Federal Rule of Civil Procedure 9(b), Plaintiff arguably has not sufficiently alleged "common law" fraudulent concealment at this time. However, because it is not clear from the face of the Complaint that Abadie did not conceal her actions under ERISA, which is the relevant inquiry on a Rule 12(b)(6) Motion implicating an affirmative defense, the Court did not sustain Defendant's Motion on this ground.

### ii. Action or Omission

Plaintiff alternatively argues that because Abadie remained a Plan trustee until August 2009, August 2009 was the "latest date" on which she could have cured the breach. Doc. 14 at 19. Accordingly, because Abadie failed or "omitted" to cure her breach, the statute of limitations did not begin to run until August 2009. Id. The Supreme Court of the United States recently stated that, in determining when the six-year limitations period is triggered under § 1113(1), the Court first must classify the alleged breach or violation as "an 'action' or 'omission'." Tibble v. Edison Int'l, 135 S. Ct. 1823, 1826 (2015) (emphasis added). The statute of limitations only runs from the latest date on which a defendant could have cured an "omission," not the latest date on which a defendant could have cured an "action" in violation of ERISA. See, e.g., Howard Elec., Inc. v. Am. Bank & Trust Co., No. C–88–20399, 1999 U.S. Dist. LEXIS 7704, at *20–22, 31 (N.D. Cal. Apr. 2, 1990).

> In Howard, the United States District Court for the Northern District of California stated,
>
> [i]n order to determine when plaintiffs' claims would become time-barred under the six-year statute of limitations, the court must determine whether to apply § 1113(a)(1)(A), which measures six years from the date of an act allegedly constituting a breach of fiduciary duty, or § 1113(a)(1)(B), which measures six years from the last date on which an omission allegedly constituting a breach of fiduciary duty could have been cured.

Id. at 31 (emphasis in original). "Omission" is defined as "[a] failure to do something; esp[ecially] a neglect of duty." Omission, Black's Law Dictionary (9th ed. 2011). In the context of ERISA violations, acts considered "omissions" have included failure to notify participants of their ability to enroll in a benefits plan, see Olivo v. Elky, 646 F. Supp. 2d 95, 102 (D.D.C. 2009), failure to inform a class about material facts tending to effect a benefits plan, see McGuire v. Metropolitan Life Ins. Co., No. 12–10797, 2014 WL 3294363, at *22 (E.D. Mich. Aug. 8, 2014), and failure "to monitor and investigate" improper investments, see Wilson Land Corp. v.

Smith Barney Inc., No. 5:97cv519, 1999 WL 1939270, at *4 (E.D. N.C. May 17, 1999). Conversely, an "action" is defined as "[a] thing done." *Action*, Black's Law Dictionary (9th ed. 2011). Acts considered "actions" include actually making the wrongful investments. See Howard, 1999 U.S. Dist. LEXIS, at * 20 (emphasis added).

In his brief, Plaintiff claims that because "Abadie failed to cure her ERISA violations throughout her trusteeship," and could have done so until August 2009, his claims are timely. Doc. 14 at 19. Put succinctly, Plaintiff claims that Abadie's failure to cure the actions she took in relation to the Stock Purchase and Loan Transactions of May 31, 2004 are akin to omissions under § 1113(a)(1)(B). Defendant argues that "[t]he plain language of the statute accompanied by its interpretive authority is clear that the limitations period runs from the date of the two 'transactions' . . . . Attempting to re-characterize the 'continual re-examination of past decisions' as 'omissions' is equally meritless and lacks any legal or factual support." Doc. 15 at 3. See Olivo, 646 F. Supp. 2d at 102 (explaining that in a previous case "the court rejected the plaintiff's argument that the defendant could still cure the breach and so the statute of limitations had not yet started running, stating that the argument 'assumes a potentially unending liability on the part of [defendants] that are alleged to have never cured a breach.'").

Plaintiff, however, also argues that Abadie "breached her fiduciary duty of prudence by failing to monitor the company stock in which the Plan invested at the time of the Stock Purchase Transaction." Doc. 14 at 20. In the Complaint, Plaintiff alleges that because each year following the Stock Purchase Transaction Abadie received a report indicating that the Company had fallen short of the projection prepared in connection with the transaction, Compl. ¶¶ 61–63, and that "[f]ollowing the Stock Purchase Transaction, Abadie failed to fulfill her duty to monitor the Company stock the Plan purchased in the Stock Purchase Transaction, and to take

12

appropriate action with respect to that investment," Compl. ¶ 101, Abadie breached her continuing duty "to monitor investments and remove imprudent ones." Doc. 14 at 20 (quoting Tibble, 135 S. Ct. at 1828–29). The Supreme Court recently held that "[a] plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones. In such a case, so long as the alleged breach of the continuing duty occurred within six years of suit, the claim is timely." Tibble, 135 S. Ct. at 1829.

At this time, there is not sufficient evidence before the Court to determine whether the wrongful events at issue in this litigation should be categorized as "actions" or "omissions." Abadie is the alleged wrongdoer, and the Court cannot determine, under current precedent, whether by accepting the alleged overpayments Abadie "omitted" to cure her alleged violations. Without further proof, the Court could not find that the statute of limitations had run on this ground.

*iii. Continuing Violation Theory*

Lastly, Plaintiff argues that, with respect only to the Loan Transaction (Second, Fourth, and Sixth Claims), his claims are timely because each May 31 payout Abadie received on the Note constituted a separate, continuing violation. Doc. 14 at 20. Under a "continuing-violation theory," "each payment based upon an alleged miscalculation 'constitutes a fresh breach by the [defendants] of their duty to administer the pension plan in accordance . . . with ERISA,' gives rise to '[a] separate cause of action,' and starts the running of a new 'limitations period . . . for each cause of action.'" Novella v. Westchester Cnty., 661 F.3d 128, 145 (2d Cir. 2011) (quoting Meagher v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan, 856 F.2d 1418, 1423 (9th Cir. 1998)). Although the United States Court of Appeals for the Ninth Circuit has adopted this theory, the Second and Third Circuits declined to do so:

> We do not adopt the continuing-violation theory. We think that method is appropriate in ERISA cases, as elsewhere, only "where separate violations of the same type, or character, are repeated over time." <u>L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau County, Inc.</u>, 558 F.Supp.2d 378, 400 (E.D.N.Y.2008). Usually, "[t]hese cases are marked by repeated decision-making, of the same character, by the fiduciaries." <u>Id.</u> But it is not as clear a fit in cases where, as here, "the plaintiff['s] claims are based on a single decision that results in lasting negative effects." <u>Id.</u> at 401; <u>see also Schultz v. Texaco, Inc.</u>, 127 F.Supp.2d 443, 447 (S.D.N.Y.2001) ("[T]he mere fact that the effects of a single, wrongful act continue to be felt over a period of time does not render that single, wrongful act a single 'continuing violation.'").

<u>Novella</u>, 661 F.3d at 146; <u>see also</u> <u>Miller v. Fortis Benefits Ins. Co.</u>, 475 F.3d 516, 522 (3rd Cir. 2007) ("[W]e decline to adopt a 'continuing violation theory' . . . Under this rule, a plaintiff could receive benefit checks for decades before deciding to investigate the accuracy of his award—a plaintiff could thereby trigger the statute of limitations at his own discretion, creating an indefinite limitations period. We decline to invite such a result.").

The Fourth Circuit has not weighed in on this debate, but the United States District Court for the District of Maryland declined to adopt this theory in accordance with the Third Circuit's reasoning in <u>Miller</u>. <u>Corrado v. Life Investors Owners Participation Trust and Plan</u>, No. 08-0015, 2011 WL 886635, *6 (D. Md. March 11, 2011). Notwithstanding this circuit split, courts have not addressed the particular factual scenario presented in this matter, in which the alleged wrongdoer is also the beneficiary for purposes of the continuing violation theory. It is unclear based on the evidence before the Court whether Defendant can plead the statute of limitations to protect herself from her own alleged wrongdoing. There is not sufficient evidence before the Court to determine whether the continuing violation theory is applicable in light of the present circumstances, and accordingly, the Court could not find that the Complaint precluded application of the continuing violation theory.

*iv. State Court Litigation*

The Court is aware that litigation between these parties is currently pending in the Circuit Court of the City of Virginia Beach. <u>Abadie v. CCG Sys., Inc. Emp. Stock Ownership Plan & Trust</u>, No. CL1500837-01 (Va. filed June 1, 2015). At the hearing on October 27, 2015, the Court expressed concern that the concurrent litigation has the potential of creating a specter of inconstant opinions should the rulings conflict, but this issue is not before the Court at this time.

## IV. CONCLUSION

For the reasons set forth herein, the Court **DENIED** Defendant's Motion and **GRANTED** Plaintiff the right to amend his Complaint if he should be so advised. If Plaintiff elects to amend his Complaint, the Court **ORDERS** him to do so within eleven (11) days of the date of the October 27, 2015 hearing. If Plaintiff files an amended complaint, the Court **GRANTS** Defendant the right file a response within eleven (11) days of the date on which Plaintiff filed his amended complaint. Should Plaintiff elect not to file an amended complaint, Defendant **SHALL** respond to the original complaint within eleven (11) days of the expiration of Plaintiff's time to file his amended complaint.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

```
                                          /s/
                              _____
                              Henry Coke Morgan, Jr.
                              Senior United States District Judge
                              HENRY COKE MORGAN, JR.
                              SENIOR UNITED STATES DISTRICT JUDGE
```

Norfolk, Virginia
October 29, 2015